IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| VERONICA HARDY, and<br>JOHN A. VICKERS, | : | |
| Plaintiffs, | : | Civil No. 15-3714 (RBK) |
| v. | : | **OPINION** |
| GLOUCESTER COUNTY;<br>WESTVILLE POLICE DEPARTMENT;<br>SERGEANT MICHAEL PACKER,<br>Individually; OFFICER THOMAS<br>CURL, Individually; HUDSON<br>BAIL BONDS; MANNY NIEVES,<br>Individually; OCTAVIO MEDINA,<br>Individually, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

**THIS MATTER** having come before the Court upon defendants Westville Police Department, Sergeant Packer, and Patrolman Curl's motion for summary judgment (Doc. No. 47) and defendants Hudson Bail Bonds, Manny Nieves, and Octavio Medina's[1] motion to dismiss (Doc. No. 52). For the reasons set forth in the opinion below, both motions are **GRANTED**.

---

[1] The parties recently stipulated to Octavio Medina's dismissal from this case.

1

**BACKGROUND**

On July 8, 2013, at approximately 10:30 p.m., Sergeant Michael Packer, Patrolman Thomas Curl, and Patrolman Brian Ewe[2] escorted bounty hunters Manny Nieves and Octavio Medina of Hudson Bail Bonds to plaintiff Veronica Hardy's ("Hardy") residence at 1029 Broadway, Apt. B-5 in Westville, New Jersey. The officers and bounty hunters sought Joshua Cariola, Hardy's son, who was a fugitive. The officers knocked on Hardy's door and Sergeant Packer asked if they could search the apartment. Hardy testified that she spoke with Sergeant Packer and gave consent for the search.[3] There is a factual dispute about whether Hardy gave informed consent; Hardy maintains that Sergeant Packer did not inform her that she could refuse the search—a requirement under New Jersey law—while Sergeant Packer claims that he did. The officers and bounty hunters then searched the apartment.[4] They did not find Cariola. Hardy testified that Sergeant Packer was "very, very nice" throughout the encounter but that the other officers did not speak at any time. Def. MSJ Br. Ex. A, Pl. Hardy Dep. Tr. 53-54.

Hardy's second amended complaint alleges that the bounty hunters "came back and searched the apartment again on July 9, 2013 and July 10, 2013" without a police escort. *See* Am. Compl. at 2.[5] Hardy's fiancé, plaintiff John Vickers ("Vickers"), joins in the suit. He was not present during the search and not a tenant of the apartment.[6]

---

[2] Patrolman Ewe is not a party to this case.
[3] Patrolman Curd did not overhear this conversation.
[4] Hardy's sister and Hardy's sister's spouse, Nicole Johnson and Kendra Johnson, respectively, were arrested on drug charges during the search.
[5] In her deposition, though, Hardy states that the bounty hunters "didn't ask to come in, search, nothing like that"; instead, they knocked on the door and asked if her son was present. Def. MSJ Br. Ex. A, Pl. Hardy Dep. Tr.at 24:9-24:22. When she stated that he was not, "they just left." *Id.* at 24:19.
[6] Whether Vickers has standing to join in this suit is its own question. We need not answer it, though, as all of the plaintiffs' claims are dismissed on other grounds.

## II. STANDARD

### A. Summary Judgment Standard

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Motion To Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. ANALYSIS

### A. Sergeant Packer And Patrolman Curl Are Entitled To Summary Judgment Because No Reasonable Jury Could Find That They Violated Hardy's Constitutional Rights.

The primary issue in determining the validity of consent, under both New Jersey and federal law, is whether the consent was voluntary. Under federal law, a person need not be specifically advised of the right to refuse a search for the search to be valid. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Under New Jersey law, an individual must be informed that consent may be refused before the consent will be effective. *State v. Johnson*, 68 N.J. 349 (1975).

Hardy does not dispute that Sergeant Packer requested her consent to search the apartment and that she gave it. She has not presented evidence that creates a material dispute as to this fact or the voluntariness of her answer. The search was thus constitutional[7]—Hardy cannot maintain a claim against Sergeant Packer or Patrolman Curl for the subsequent search.[8]

### B. Plaintiffs' Claims Against The Westville Police Department Must Be Dismissed Because There Is No Underlying Constitutional Violation.

In order to establish liability on the part of a government body, there must first be an underlying constitutional violation on the part of an individual officer or employee. *City of Los*

---

[7] As will be discussed on pg. 8-9, there are no extenuating circumstances that justify this Court exercising supplemental jurisdiction on any remaining New Jersey state law claims.

[8] Patrolman Curl is additionally protected because he is privileged to presume that consent to search the residence was properly obtained by Sergeant Packer before the search. Patrolman Curl did not hear the conversation between Hardy and Sergeant Packer. This is undisputed. Because a police officer may assume a fellow police officer followed standard protocol absent personal knowledge otherwise, Hardy could not maintain a suit against Patrolman Curl *even if* the search were unconstitutional, which it was not. *See White v. Pauly*, 137 S. Ct. 548 (2017).

5

*Angeles v. Heller*, 473 U.S. 796 (1986); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) (There "cannot be an award of damages against a municipal corporations based on the actions of its officers when in fact . . . the officer inflicted no constitutional harm") (internal quotations omitted). Assuming a plaintiff *did* suffer a constitutional violation at the hands of an employee or officer of the governmental body, the plaintiff must prove an official policy or a custom was the cause of the constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).

As discussed in Subsection A, there is no constitutional violation in this case—Plaintiff did not suffer a constitutional violation at the hands of the officers here. As such, there cannot be liability on the part of the government body.

### C. The Constitutional Claims Against Hudson Bail Bonds, Manny Nieves, and Octavio Medina Must Be Dismissed Because They Are Private Actors.

A 42 U.S.C. § 1983 cause of action requires a state actor or an actor operating under the color of state law or authority. *See Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) (The Fourth Amendment was "intended as a restraint upon the activities of a sovereign authority, and was not intended to be a limitation upon other than governmental agencies."). This explains why certain instances of conduct by ordinary citizens acting only in a private capacity will not trigger constitutional protections that would apply if government agents exercising governmental authority behaved identically. *See Couch v. United States*, 409 U.S. 322, 332 n. 14 (1973); *Burdeau*, 256 U.S. at 474-76; *State v. Mollica*, 114 N.J. 329 (1989).

*July 8, 2013 Search In The Presence Of Police Officers.*

The search on July 8, 2013 raised questions about the police officers' actions. But the officers did not commit any constitutional violations. As such, whether the bounty hunters were

acting as private actors or under the color of state law or authority because they were accompanied by police officers is an academic discussion and irrelevant—the officers themselves did not violate any of Hardy's constitutional rights, so the bounty hunters who executed the search with them did not do so either.

*July 9, 2013 And July 10, 2013 "Searches" Without A Police Escort.*

Hardy's allegations stemming from the "searches" on July 9, 2013, and July 10, 2013 must be dismissed for failing to state a claim upon which relief can be granted.[9] The bounty hunters sought to enforce a civil contract between Hardy's son and the bail bondsman. They were "obligated to locate, apprehend, and return the defendant." *State v. Mercado*, 329 N.J. Super. 265, 271 (App. Div. 2000).

The question is whether bounty hunters are state or private actors for the purposes of these alleged searches. Other federal circuits have concluded that bounty hunters are not state actors. *United States v. Rose*, 731 F.2d 1337, 1345 (8th Cir. 1984); *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir. 1983); *see also State v. Ira Sanders*, 185 N.J. 258, 262 (App. Div. 1982) (Where two casino security guards were considered private actors because "constitutional protections against unreasonable searches and seizures are generally inapplicable to searches performed by private parties."). This Court is inclined to agree.

---

[9] This part of the Court's opinion discusses a motion to dismiss for failure to state a claim upon which relief can be granted, and therefore this Court must only consider the pleadings in which Hardy alleges "searches" by the bounty hunters. Hardy nevertheless stated in her subsequent deposition that the bounty hunters knocked on her door and left on both July 9, 2013 and July 10, 2013, and admitted that they searched her apartment on neither occasion. As such, Hardy either made a serious error in her complaint when she alleged "searches" in both instances or she knowingly mischaracterized what occurred. This issue, however, plays no role in the Court's decision today.

7

In order for the bail bond system to function, a bail bondsman must be able to enforce the bail agreement. If she were unable to do so, she would be much less inclined to post bail in the first place. This would result in a smaller number of defendants who are actually able to exercise their constitutional right to pretrial bail. Furthermore, as a private contract, this Court is inclined to presume that defendants understand the nature of posting bail and the responsibilities a defendant assumes in contracting with a bail bondsman to do so. Should a defendant be unwilling to accept the terms of the agreement—i.e. that a bail bondsman can search for them without certain constitutional protections reserved for protecting against *state* actors—then the defendant can elect not to post bail or, if they have the means, to post bail without using a bail bondsman.

Because a bounty hunter working to enforce a private contract between a bail bondsman and a fugitive-defendant is not a state actor for the purposes of the Fourth Amendment, plaintiffs' 42 U.S.C. § 1983 claims against Hudson Bail Bonds, Manny Nieves, and Octavio Medina must be dismissed.

This Court also notes that amendment would be futile. Generally when a motion to dismiss is granted, the Court does so with leave to amend. Here, 42 U.S.C. § 1983 claims against Hudson Bail Bonds, Manny Nieves, and Octavio Medina are impossible because they acted as private actors in a private capacity. As such, granting plaintiffs leave to amend would be futile.

**D. It Would Be Inappropriate For This Court To Exercise Supplemental Jurisdiction As To Any Remaining State Law Claims.**

Supplemental jurisdiction is a "doctrine of discretion." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). This Court "may decline to exercise supplemental jurisdiction" when "all claims over which it has original jurisdiction" are dismissed. 28 U.S.C. § 1367(c).

8

Judicial economy, convenience, and fairness to the litigants are weighed in determining potential retention of jurisdiction. *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 737 (3d Cir. 1994). There is, however, a strong policy of allowing state courts to decide state matters. *Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984).

Such extenuating circumstances are not present in this case. This Court declines to exercise supplemental jurisdiction on any remaining New Jersey state law claims as they are best decided by the New Jersey state courts.

### IV. CONCLUSION

For the reasons set forth above, defendants Westville Police Department, Sergeant Packer, and Patrolman Curl's motion for summary judgment is **GRANTED** and defendants Hudson Bail Bonds, Manny Nieves, and Octavio Medina's motion to dismiss is **GRANTED**.

Dated: 11/02/2017                  s/Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge